# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LYNN WARDLEY,<br><br>       Plaintiff,<br><br>vs.<br><br>SCOTT MCLACHLAN and GARY KEARL,<br><br>       Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION TO DISMISS COUNTERCLAIMS<br><br>Case No. 2:21-CV-00128-DAK-DAO<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff Lynn Wardley's ("Wardley") Motion to Dismiss Counterclaims. Wardley moves to dismiss counterclaims Three, Four, and Five of Defendants' Counterclaim, as well as any arguments regarding the court adjudicating tax issues within the First and Second counterclaims, pursuant to Fed. R. Civ. P. 12(b)(1) and (6). The court held a hearing on the motion on September 21, 2021. At the hearing, Wardley was represented by Matthew L. Lalli and Jeremy J. Stewart. Defendants were represented by Scott O. Mercer. The court has carefully considered the memoranda submitted by the parties, the arguments made by counsel at the hearing, and the law and facts relating to this matter. Now being fully advised, the court now renders the following Memorandum Decision and Order.

## BACKGROUND

For over 25 years, Wardley and Defendant Scott McLachlan ("McLachlan") were in business together developing real estate and related infrastructure in and around Saratoga Springs, Utah. Lake Mountain Mutual Water Company ("LMM") is one entity that was utilized by Wardley and McLachlan to conduct some of their joint business. Wardley and McLachlan

1

were 50/50 shareholders of LMM. In the mid-1990s, McLachlan contributed land to LMM for the purpose of drilling water wells to form a culinary water system for the development of the Saratoga Springs community.

Wardley and McLachlan began winding up their business affairs in 2004. Since then, they have been engaged in various disputes and litigation regarding their business interests and entities. In February 2006, Wardley, McLachlan, and other related parties entered into a Restructuring and Distribution Agreement (the "Agreement") whereby, among other things, Wardley and McLachlan agreed to divide up many jointly held assets. One particular section of the Agreement, paragraph 5(a), has since become an area of dispute in two court cases. Paragraph 5(a) of the Agreement states:

> Within 60 days of the execution of this Agreement, McLachlan shall pay to Wardley the sum of $256,000. This includes a credit from Wardley to McLachlan for all lands and easements related to the culinary system water transferred to the City of Saratoga Springs under the LMM settlement agreement, as well as the Easements described in paragraph 4, above. This also includes a credit from Wardley to McLachlan for the transfer of McLachlan's 19 shares of Utah Lake Distributing stock. (ECF No. 22; Exh. A)

*The Wells Case*

By 2012, Wardley and McLachlan still held some assets jointly – including two property lots and wells. For years, the parties were unable to divide up these assets. In order to deal with the property lots and wells, Wardley filed a complaint on May 5, 2012 against McLachlan and others in the lawsuit *Wardley v. McLachlan et al.*, Case No. 120400700 (4th Dist. Utah) (the "Wells Case").

Wardley filed a notice of lis pendens ("Lis Pendens") in the Wells Case on June 22, 2017. McLachlan filed a motion on December 7, 2018 for the release of the Lis Pendens. At a February 11, 2019 hearing, the state court allowed the Lis Pendens to remain because there was pending litigation regarding ownership. The state court stated: "it's appropriate to give notice as it relates

to anyone that may be purchasing the subject property or has an interest as it relates to that, that in fact a title is under dispute . . . That's going to be the order of the Court." (ECF No. 22; Exh. E at 21:2-17). The state court did not hear oral arguments regarding the merits of the Lis Pendens during that February hearing, but instead bumped the issue to be considered later.

At that same February hearing, McLachlan's counsel raised an argument that the property descriptions in the Lis Pendens were overbroad because they describe the entire property parcels instead of the specific portion of the properties affected by the wells and easements at issue in the Wells Case. In response, the state court instructed the parties to brief the issue before a subsequent telephonic hearing "so that we can address this further issue in connection with the narrowness issue." (ECF No. 22; Exh. E at 23:15-22, 24:20-23, 26:13-16). After the additional briefing, the state court concluded the following at a hearing on February 19, 2019:

> The lis pendens may remain. There was some reasonable anticipation that the parties could look towards, you know, a narrowing of it as it relates to an easement in connection with the two wells. But the more that I read is that the lis pendens as it relates to that goes to the entire property involved. I don't want to hear any arguments relative to that, but it may remain. (ECF No. 22; Exh. F at 4:12-19)

The state court held a bench trial in the Wells Case on June 4, 7, 10, and 11, 2019. At the end of the trial, Judge Davis released the Lis Pendens because "[i]t is unnecessary for a Lis Pendens to continue to encumber the real properties upon which the North and South Well sit in light of the valid, recorded easements held by LMM." (ECF No. 22; Exh. G).

On October 1, 2019, the state court issued its Findings of Fact, Conclusions of Law, and Decision in the Wells Case. In this decision, the state court tolled Wardley's prejudgment interest for the time period during which the Lis Pendens was in place. (ECF No. 22; Exh. H at Findings of Fact). On December 4, 2019, McLachlan filed a Motion for Attorney Fees Related to Lis Pendens – arguing that, pursuant to Utah Code Ann. § 78B-6-1304.5, McLachlan was entitled to

3

an award of attorney fees and costs he incurred to get the Lis Pendens removed because the Lis Pendens was overbroad.

On May 21, 2021, the state court issued a Ruling re: Well Valuation and Damages, which stated that the court previously decided the issue with respect to the Lis Pendens, and also entered judgment against McLachlan in favor of Wardley. In this ruling, the state court stated that, as per its earlier determination, "Wardley [had] caused an improper lis pendens to be placed on McLachlan's property." (ECF 22; Exh. K at 9). Wardley filed a motion for clarification on this statement because he believes it to be in opposite to two previous determinations by the prior judge on the case. The clarification motion was decided on July 20, 2021. The decision clarified that the Lis Pendens issue had been determined – that it was improper – and that this was the reason for the tolling of the prejudgment interest for the time that the Lis Pendens was in place. *Wardley v. McLachlan et al.*, Case No. 120400700 (Ruling Re: Wardley's Motion to Clarify), at 2-3.

*The Present Action*

On March 3, 2021, Wardley properly filed the present case against McLachlan and Gary Kearl in federal district court. McLachlan and Kearl filed Answer to Complaint, Counterclaim on April 29, 2021. The present motion is Wardley's Motion to Dismiss Counterclaims, brought by McLachlan on April 29th.

## **DISCUSSION**

Wardley moves to dismiss with prejudice each of McLachlan's (1) Third Cause of Action for declaratory judgment regarding tax treatment of LMM; (2) Fourth Cause of Action for declaratory judgment regarding McLachlan's loan to LMM; and (3) Fifth Cause of Action for wrongful lien. Wardley also requests that the court dismiss with prejudice any tax issues the

court would have to decide in McLachlan's First and Second Causes of Action. Wardley brings this motion pursuant to Fed. R. Civ. P. 12(b)(1) for the court's lack of subject matter jurisdiction over the tax issues, and Fed. R. Civ. P. 12(b)(6) for McLachlan's failure to state a claim in his Fourth and Fifth Causes of Action. To resolve Wardley's motion, the court addresses the issues as follows.

I.     **12(b)(1) Motion to Dismiss Tax Counterclaims**

*Standard of Review*

Rule 12(b)(1) "allows a court to dismiss a complaint for lack of subject matter jurisdiction." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (citation omitted). "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Id*. at 1151 (quoting *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013)). "[F]ederal subject matter jurisdiction is elemental," and "must be established in every cause under review in federal courts." *Id*. (quoting *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1022 (10th Cir. 2012)). The "burden of establishing" a federal court's subject matter jurisdiction "rests upon the party asserting jurisdiction." *Id*. (citation omitted). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id*. (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

*Declaratory Judgment Act*

As per his Counterclaim, McLachlan asks the court to resolve a tax dispute regarding the "tax treatment" by LMM of certain funds as well as the "tax treatment" of various payments allegedly made by LMM. (ECF No. 17, at ¶ 26-29). McLachlan also seeks a "declaratory judgment regarding tax treatment of LMM" and a declaratory judgment order that LMM prepare

and file tax returns for a period of 25 years. (ECF No. 17, at ¶ 27-29, 52). McLachlan cites to 28 U.S.C. § 2201 as the basis for the court's authority to provide this relief. (ECF No. 17,at p. 29). However, this court does not have subject matter jurisdiction to do so.

The Declaratory Judgment Act expressly excludes tax cases or controversies from federal district court jurisdiction. 28 U.S.C. § 2201(a). Tenth Circuit case law supports this position as well. *Rael v. Apodaca*, 210 Fed. Appx. 787, 790 (10th Cir. 2006) (It "is well established that a case involving income taxes must be filed in Tax Court, and the district court lacks jurisdiction"); *see also Ambort v. United States*, 392 F.3d 1138, 1140 (10th Cir. 2004). The Tenth Circuit interprets the Declaratory Judgment Act as barring federal district courts from determining tax liabilities. *Sterling Consulting Corp. v. United States*, 245 F.3d 1161, 1166 (10th Cir. 2001); *Stephens v. Alliant Techsystems Corp.*, 714 Fed. Appx. 841, 845 (10th Cir. 2017). This includes any "claim[s] for declaratory relief" that "involve[] federal taxes." *See Lehman Bros. Bank, FSB v. Beverly Hills Estate Funding, Inc.*, 456 F. Supp. 2d 1211, 1214 (D. Utah 2006) (quoting *Wyoming Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930, 933 (10th Cir. 1996)). Even when a party is "not seek[ing] a determination of tax liabilities or assessment of taxes," those claims for declaratory relief still involve federal taxes and are therefore outside of the subject matter jurisdiction of federal district courts. *See Lehman Bros. Bank, FSB v. Beverly Hills Estate Funding, Inc.*, 456 F. Supp. 2d 1211, 1214 (D. Utah 2006).

Although McLachlan has found a few district court cases from foreign jurisdictions that have allowed for some ancillary tax matters to be adjudicated in federal district court, none of those cases persuade this court because the Tenth Circuit has not permitted this.[1] The

---

[1] McLachlan cited to the following foreign district court cases: *Mastan Co. v. Jackson*, 321 F. Supp. 865, 866 (N.D. Ill. 1971) (allowing a breach of warranties action concerning a corporation's accounting practices, even though such accounting practices had resulted in an IRS deficiency and damages would be affected by the determination of plaintiff's tax liability); *Nathel v. Siegal*, 592 F. Supp. 2d 452, 474 (S.D.N.Y. 2008) (allowing a declaratory action

6

Declaratory Judgment Act and Tenth Circuit case law prohibit this court from adjudicating the tax issues McLachlan has raised and from providing the accompanying relief that McLachlan requests. This court does not have subject matter jurisdiction over McLachlan's Third Cause of Action for declaratory judgment regarding tax treatment of LMM, or over any tax issues the court would have to decide in McLachlan's First and Second Causes of Action.

II.     **12(b)(6) Motion to Dismiss Counterclaims Four and Five**

*Standard of Review*

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations in a complaint and views them in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In doing so, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted). The court "need not take as true the complaint's legal conclusions." *Dronsejko v. Thornton*, 632 F.3d 658, 666 (10th Cir. 2011). Thus, to withstand a 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to rise above the speculative level and state a plausible claim for relief. *Iqbal*, at 666.

    a.     **Counterclaim Four – McLachlan's Loan to LMM**

McLachlan requests that the court find that McLachlan's contribution of land and easements to LMM was a loan that needs to be repaid out of LMM's assets, or alternatively that

---

seeking adjudication of which party is liable for future tax assessments, as opposed to an adjudication of liability between a party and the federal government); *Henshel v. Guilden*, 300 F. Supp. 470, 472 (S.D.N.Y. 1969) (allowing a declaratory action to determine "which of two entities is liable" for taxes, without deciding "whether any tax is due the United States or, if so, how much"); *Dominion Tr. Co. of Tennessee*, 786 F. Supp. At 1324 (same); *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1030, 1063 (S.D. Cal. 2018) (explaining "[t]he fundamental dispute between the parties is whether Section 6050H requires Nationstar to report deferred interest payments" and the court could "properly order Nationstar to provide information to the IRS regarding deferred interest").

the court "enter a declaratory judgment valuing McLachlan's contribution of land and easements to LMM and declaring such to be capital contributions, which shall be equalized and paid out in the winding up of LMM's business and assets." (ECF No. 17, at ¶ 55-56). Wardley objects to this and argues that McLachlan already received consideration for his contribution of land and easements to LMM through the form of a credit – as per paragraph 5(a) of the 2006 Restructuring and Distribution Agreement.

McLachlan counters with the assertion that Wardley repeatedly argued in the Wells Case that this "credit" was "$100,000 that Wardley gave up in exchange for valid Easements" to the two wells at issue in that case. (ECF No. 24, at 11). The state court awarded Wardley that full $100,000 credit due to McLachlan's failure to timely provide the two particular well easements. McLachlan contends that if the credit was actually consideration for more than just the two easements, then McLachlan should not have received the full $100,000 back. McLachlan further argues that since he was harmed by the state court holding in the Wells Case that the credit in paragraph 5(a) of the Agreement was given only in exchange for the easements underlying two particular wells, that Wardley should be judicially estopped from now arguing the inconsistent position that this same credit refers to the land McLachlan contributed as well.

Wardley agrees with McLachlan that the $100,000 awarded in the Wells Case was the credit for the two wells at issue in that case. However, Wardley argues that there is a broader credit – as provided for in a prior provision in paragraph 5(a) – that was given from Wardley to McLachlan "for all lands and easements related to the culinary system water transferred to the City of Saratoga Springs under the LMM settlement agreement." (ECF No. 22; Exh. A at ¶ 5(a)). Wardley contends that it is the credit referred to in this separate provision that was the consideration given to McLachlan for his contribution of land and easements to LMM, and

8

therefore McLachlan cannot recover a further $3.1 million from this contribution. Wardley also asserts that his positions in the Wells Case and the current case are consistent because the credit at issue in this case relates to the provision just discussed, while the credit at issue in the Wells Case was for the easements described in paragraph 4 and referred to in the later provision in paragraph 5(a).

The problem the court faces is the ambiguity of the Agreement. The language identifies "a" credit given for "all" lands and easements transferred, but then separates the provision "as well as the Easements described in paragraph 4" by only a comma. The court is unclear as to whether this signifies one or two credits given – especially in light of the Wells Case holding that the "credit" in this paragraph was given only for two easements. If the credit is only one, and the Wells Case holding regarding this credit stands, then McLachlan would have a good argument for judicial estoppel. However, if there were more than one credit, and the other credit did actually cover the lands that McLachlan contributed to LMM, then McLachlan would not be able to recover for this contribution again. Due to the considerable ambiguity of paragraph 5(a) of the Agreement and the surrounding facts, and in consideration of the Wells Case holding and the high monetary stakes involved, the court finds at this time that it is plausible that McLachlan has raised a claim upon which relief may be granted. Therefore, the court will not dismiss McLachlan's Fourth Cause of Action.

   **b. Counterclaim Five – Wrongful Lien**

*Statutes of Limitations*

Two statutes of limitations apply to McLachlan's Fifth Cause of Action for wrongful lien: Utah Code Ann. § 78B-6-1304.5 and § 78B-2-302(2). The first statute, under which McLachlan pleads this cause of action, sets the statute of limitations for wrongful lis pendens

claims requesting damages at three years. The second statute, which McLachlan implicates by requesting a remedy of "$10,000 or [] treble actual damages", sets the statute of limitations for requesting civil penalties for a statute violation at one year. (ECF No. 17, at ¶ 64). Since the Lis Pendens at issue was recorded on June 22, 2017, and McLachlan did not file his Counterclaim in the present case until nearly four years later on April 29, 2021, this Fifth Cause of Action is time-barred.

McLachlan acknowledges that this claim is statutorily time-barred, but argues that it should still be permitted as an offset. Utah law does allow for some offsets. A defendant may "utilize a counterclaim, normally barred by the statute of limitations, to offset a plaintiff's claim, but only to the extent the claims equal each other." *Coulon v. Coulon*, 915 P.2d 1069, 1072 (Utah 1996). However, claims "may be offset only if they coexisted." *See id.*, citing *Salt Lake City v. Telluride Power Co.*, 17 P.2d 281, 286 (Utah 1932). "[T]wo claims are coexistent and overlapping in point of time … [if] both are subsisting claims before the statute of limitations has run against either." *Telluride*, 17 P.2d at 286. "There must be an overlapping of live demands in point of time. If the demand of one party becomes barred and is not subsisting as a cause of action when the demand of the other party comes into existence, the former demand is not available." *Id.* at 285, quoting *O'Neil v. Eppler*, 162 P. 311, 312.

McLachlan does not sufficiently establish that he has met these offset requirements. All McLachlan asserts is that his "wrongful pendens claim occurred during the same course of events underlying Wardley's claims, i.e., during the Wells Case." (ECF No. 24, at 9). McLachlan provides no more details than this, nor does he clarify what damages claims by Wardley he is now trying to offset. Therefore, McLachlan has not raised sufficient facts to establish that there

is a plausible claim for relief for the wrongful lis pendens claim, either as pleaded in the Counterclaim or as an offset.

*Res Judicata*

If the wrongful lis pendens claim were not time-barred, it would alternatively be precluded due to the doctrine of issue preclusion.

Issue preclusion applies if the following four elements are satisfied: "(1) The party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (2) The issue decided in the prior adjudication was identical to the one presented in the instant action; (3) The issue in the first action was completely, fully, and fairly litigated; and (4) The first suit resulted in a final judgment on the merits." *Yudin v. Jordan Sch. Dist.*, No. 2:18-CV-562, 2019 U.S. Dist. LEXIS 224546 at *10-11 (D. Utah Dec. 13, 2019) (quoting *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 23 285 P.3d 1157).

The parties do not dispute that the first three elements of issue preclusion are satisfied. The first element is satisfied because McLachlan was a party to the Wells Case and he is now a party in this case. The second element is satisfied because the state court in the Wells Case determined the identical issue underlying McLachlan's wrongful lis pendens claim in this case – the propriety of the Lis Pendens. The third element is satisfied by the motions, briefs, and hearings regarding the Lis Pendens, that both parties participated in, during the Wells Case. The parties only dispute whether the fourth element requiring final judgment is satisfied.

In Utah, issue preclusion requires that "the first suit resulted in a final judgment on the merits." *Heywood v. Dep't of Commerce, Div. of Real Estate*, 2017 UT App 234, ¶ 25, 414 P.3d 517. Utah courts have also utilized "an older and differently worded formulation of the issue preclusion test that expressed the final judgment requirement as 'the issue must have been

11

decided in a final judgment on the merits in the previous action." *Fowler v. Teynor*, 2014 UT App 66, ¶ 28, 323 P.3d 594. A rendered judgment or order is considered final for purposes of res judicata until reversed on appeal, modified, or set aside in the court of rendition. *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 390 (Utah Ct. App. 1987). Thus, "[a] 'final judgment' for purposes of issue preclusion 'includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" *Heywood*, 2017 UT App 234 at ¶ 28 (quoting Restatement (Second) of Judgments § 13 (1982)). In turn, a decision is "sufficiently firm" if "it was not tentative, the parties had an opportunity to be heard, and there was an opportunity for review." *Id*.

The facts from the Wells Case presented to this court create a confusing picture as to whether there was a final judgment on the Lis Pendens issue in the state case. Fortunately, the state court's Ruling Re: Wardley's Motion To Clarify, given on July 20, 2021, clears up the confusion. In this ruling, the state court states:

> In the Ruling re: Well Valuation and Damages in Light of Amended Ruling and Order, this Court only mentioned that it had previously determined that Wardley caused an improper lis pendens to be placed on the subject property []. Such is true, and that finding will not be disturbed. Another issue related to the lis pendens was whether prejudgment interest could be awarded. This Court determined that no prejudgment interest could be awarded. *Wardley v. McLachlan et al.*, Case No. 120400700 (Ruling Re: Wardley's Motion To Clarify), at 2-3.

The court understands this to mean that the state court made a final judgment that the Lis Pendens was improper, and that, as a result, the state court did not award Wardley prejudgment interest for the time period during which the wrongful Lis Pendens was in place. This is a final judgment with conclusive effect for purposes of issue preclusion. Since this final judgment has not been reversed on appeal, modified, or set aside in the court of rendition, the court finds that

12

the Lis Pendens issue in the present case, and therefore McLachlan's Fifth Cause of Action, is precluded.

## **CONCLUSION**

Based on the above reasoning, the court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion to Dismiss Counterclaims. The court GRANTS the motion as to Causes of Action Three and Five, as well as to any tax issues in the First and Second Causes of Action that require adjudication from this court. The court DENIES Plaintiff's motion as to the Fourth Cause of Action in the Counterclaim.

DATED this 23rd day of September, 2021.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge